We thought we ought to move you up, otherwise you'd be waiting here a while. I appreciate that, Your Honor. Sounds like big stuff's happening later. Interesting stuff. Interesting stuff. Please proceed. Good morning. Robin Workman. May it please the Court. As outlined in my papers, plaintiff contends, or appellant now contends, that the trial court made a myriad of errors. I will take them in order in which I believe they occurred. The first, with respect to the class certification denial. Particularly with respect to the claim that the time these service techs spent transporting Hobart's tools and equipment to and from the job site, whether or not that was compensable, the trial court, as Amgen stated and as recognized in the United Steel's decision of Your Honor, put the cart before the horse and said, based on a commonality ground, that because I could not state a legal theory under which I would prevail on that claim, that class certification was inappropriate. That is error under Amgen and United Steel. But it really is going to go to the next issue, which was appropriate on summary judgment, right? Understood. I don't... I mean, I understood your argument, but every time I read your argument I kept thinking, well, I've got another one back there on summary judgment, which probably doesn't make this one too important. Well, I believe that it does. Well, I can believe that an attorney would, for sure, knowing exactly what the attorneys get out of the class action and what they don't otherwise.  Well, I guess the... let's get that elephant back in the room, all right? Now, with respect to summary judgment, I believe, as outlined in the papers, that the trial court erred there as well. I'll take the claims one at a time. With respect to this particular issue of the time spent hauling this equipment to and from the employer's jobs, whether or not that is compensable, the judge ruled there were no issues of fact and I lost as a matter of law. And I said to myself, it appears to me that the central issue in this decision is whether Hobart requires the employees to commute in the company vans. I believe... It seems to me that without that requirement it has no control because no one, it seems to me reading your papers, no one disputes that if the employees commute in any manner they want to commute, then the company has no control. Two issues, Your Honor. The first, I believe there's issues of fact on the first issue you identified. Whether or not this particular decision, do they get to choose whether or not that is decided? Well, it isn't a matter of what the policy says. What you're really arguing there is practicality, isn't it? Both practicality and what the policy also says. The same policy, the rules and regulations to which Hobart cites specifically says that these individuals are responsible personally for everything in these company econo-vans that are assigned to them. They also say, though, that if they park it at the company's headquarters or location that they wouldn't hold the driver, the employee liable if it got broken into. They do not say that, Your Honor. What the policies say is you're personally responsible for the equipment. And what every technician testified and what their 30B-6 witness stated, not a single technician ever parked their company vehicle at the location. But just a minute. Yes, Your Honor. It seems to me that what it says is the employees are liable for the losses if they were due to their negligence. And so therefore, it seems to me, and trying to look, do we have any evidence that if the employee left the vehicle at the office and locked them, they'd have to pay? Do we have any evidence about that? That's not what the regulation says, though. Oh, well, but just a minute. Or the rules say. Just a minute. It says they're only liable if they're due to their negligence. They're responsible. So I said, is there any evidence that the employee left the vehicle and locked it, they'd have to pay? If it left it unlocked? Left it locked. There is no evidence that any of this ever happened because no employee ever left the vehicle at the company site. Are there incentives for taking the vans like payment of gas? Because the fact that no one leaves the vehicles at the office doesn't say anything to me. Having been an employee once, I remember. You still are. Yeah. Having been an employee again, when I get compensation for my driving my van and I can drive it wherever I want, I don't necessarily leave it at the office. So I look for the evidence. And I said, is there any evidence that if they left them at the place and they locked them, they'd have to pay? Is there any evidence that all the parking spaces are ever used? So is there any evidence there isn't enough parking places? Is there any evidence that suggests that there are other reasons other than just because the reason you suggest is the only reason nobody parks there? When I got through with that, I said, I don't know whether I can quite say there's control. As to one of the elements Your Honor listed, their 30B6 witness testified unequivocally there was not enough space at these branches to park these vans in secured locations. That's because they're guessing. They have no idea. Nobody ever parks there. So we don't really know that. Well, let me get it. I'm trying to just understand what your argument is, and then I'll turn you over to my colleague. That's what his testimony was. He didn't indicate that he was guessing. When I asked him specifically, is there space at these locations where these individuals can put these vans, store them in a secure location, he said unequivocally no. Yes, Your Honor. My understanding, and I want you to correct me if this is wrong, is that ER 2847 through 51, Hobart's representative said that there were enough unsecured parking spaces available at each branch, but there was not enough secured parking available. Oh, yes, he said you could park them on the street. Right. Yeah, he did. So bottom line is at least for purposes of whether there's a material conflict in the issue of control, one could at least infer that since the employee might be held liable for the loss of the equipment, they would not want to park in an unsecured area. They might want to park in a secured area. And there may or may not be an inference that could be drawn from the fact there was an inadequate amount of secured parking. Is that a fair statement? Yeah, the testimony was they did not park their vans at the company locations because they couldn't secure them. Right. So when the plaintiff was asked that question, he said there was not room in a secure location. So yes, indeed. Now, with respect to if I implore the court to look again at the rules and understandings, and the rules and understandings specifically say, this is the document upon which Hobart lies. I assume full responsibility for those tools as well as the service manuals provided to me. In that document, which – Are you suggesting that that says they have strict liability? I'm saying when they tell these laypeople, you've got full responsibility for all of the stuff in this van. The laypeople don't know strict liability versus negligence. They know I'm responsible. And so what do they do, and what does this company know they do? Because they all take them home. Now, with respect to the other issue that I want to get to on this, is it compensable time? What the district court did not do is look at the second way time can be compensable. He focused on control, which we've been talking about. But Marion is very clear that there's two ways time can be compensable. If you're under the employer's control, or if the work is suffered and assumed. By that, the employee is working, and the employer knows about it. There's no question Hobart knows these people are carrying all of their tools and equipment, which is thousands and thousands of dollars, for which they can't do their job to the work sites. They know about it. The question is, did this constitute work under the analysis set forth in all the decisions? The district court, in ruling on summary judgment, did not look at that second element of is this compensable time. The district court solely ruled on control. Said no control, so you lose. Didn't look and see. Is the fact that these employees are essentially the mobile warehouses for this company and carrying all the tools and equipment that they need to do their job. Realistically, getting back to what my colleague said about summary judgment, whether you prevail on the point or not, you're saying this is an issue of fact. And it is a material issue of fact because your whole case depends on whichever approach you take. There are sufficient facts to back that up. You're saying the district court made a decision about the facts, and that was improper. Yes, Your Honor. And in making the decision about the facts, it did not include this analysis. As the district court decision, I cited the Campbell decision. What do I do with Ruti when I look at your last argument? It seemed to me that Ruti v. Lojak says, commuting time spent in an employer-owned service vehicle is not compensable under federal law, even where the employer has imposed significant restrictions on the employee's personal use, and even where the employee transports tools and equipment necessary for the performance of his job. That's under federal law, the Portal to Portal Act. I understand what that says. Yes. So that's a great argument. Then I look at the 29 CFR 785.35, and 29 which talks about what is compensable as to the employee who travels to and from work. That's, again, I'm trying to determine based on what I have with morally on, and that's in Idaho, I may have that wrong, versus royal packing where it says where the employee is required to use the company-owned transportation to commute and exercises a right to control. So it seemed to me the California case really emphasized the right to control. What Maureen was very clear about, Your Honor, was there's two tests, right? Control and suffered and assumed. The Court of Appeal messed up a marion because they said because you're not actually doing work when you're traveling in the van, it's not compensable. And the court said, Well, because they may not be working, but we've got them controlled, so it's work under that standard. What we have to look at is under California law, would an issue of fact remain for summary judgment as to whether this time is compensable? The district court case that I cited, the Campbell decision, addressed this very same fact pattern and rejected summary judgment. What do I do with Overton versus Walt Disney? And I thought that the Gonzales case was very interesting when it said the issue is going to be does Ruti or Marie own control or does Overton control? That's an issue to be decided. Overton is completely distinguishable. And the basic fact I think that's easy to grab onto, in Overton the fact was at least 10% of the population chose to get to however they got in a different way other than this little van. We don't have that here. 100% of the service technicians followed this practice. While there's other reasons to distinguish Overton, I think that's the easiest one. And when looking at this control issue, Your Honor, I think the Supreme Court decision from Washington, the Stevens versus Brink decision, which was followed in Campbell, is helpful. Because that Supreme Court, which has laws similar to California's, said, look, the point is what level of control does the employer exercise when the employee is driving the vehicle. The fact that they had agreed, they had an option whether they could drive the vehicle or not, that court found irrelevant, as did the Campbell court. Counsel, do you want to save any of your time for rebuttal? Yes. I'm winding up now. Okay. Thank you, Your Honor. I haven't got a lot of time left. We'll hear from the opposition. Thank you and good morning, Your Honors. Good morning. I would double down on counsel's suggestion that the court focus some attention on the service technician agreement. Because as the district court found, and as is plain from that service technician agreement, Hobart's only policy with regard to use of the service van for commuting purposes is it's entirely up to the service technician. Well, that's true. But if you think you're going to be responsible for some very expensive tools, doesn't that in effect compel you to do something different than the words themselves suggest? Sure. You know, again, plaintiff contends that it's a de facto policy. Notwithstanding the fact I signed an agreement that says it's completely up to me whether I take the van home or park it at the branch office. Well, counsel, this is unfortunately today more and more the issue. You'll have an employer that will say, you know, the sun is out, but it's really the moon, and I want you to sign this agreement, and if you want a new job, you better say it's the moon. But in fact, if the reality is that there's a question of whether it may be the sun, then that's what the juries are for or the judge is for if the judge is going to try the facts. Isn't that correct? Your Honor, even if one takes at face value plaintiff's assertion that he believed his van to be more secure when parked overnight at his branch office than when parked at his home overnight. And by the way, that's a proposition that Hobart's declarants describe as which Hobart's declarants that include service technicians describe as nonsense, ridiculous, suspect, or simply untrue. I thought every one of them take their vans home. Every one of them takes their vans home, and they take their vans home because it's clearly to their benefit to do so. You know, the fact that an action is taken because it benefits the person taking the action, they save on wear and tear on their own vehicle, they save on gas, they save it's more convenient to get to their first assignment. The fact that all these service technicians act in their own self-interest as backed up by our declarations doesn't suggest at all that they're compelled to do something against their will. Isn't that a classic issue of fact that should be trying to the jury? Well, certainly not for purposes of class certification, Your Honor, because there the issue is whether there's a predominant question by which the issue of voluntariness can be determined at one stroke, in the words of Dukes, or whether it's going to be an individualized determination. And here you have declarants that Hobart presented into evidence who state that they take their vans home because it's in their benefit to do so. They voluntarily do it because it benefits them to do so. Well, if we're talking about the class certification issue as to commuting time, it seems to me that the common question is not the one the district court focused on, but is Hobart has a policy of not compensating its employees for travel time during normal commute, whether they drive the company van or their car. Does that violate California law? Absolutely not. Just a minute. That's the question. If that's the common question, then the class should have been certified. That's my point. I'm not dealing with the ultimate question here. You talked about class certification, and now I tried to boil down to what the common question was. It seems to me that's the common question. The court is focused on a question that I think is a summary judgment question. But the question about whether the Hobart policy of not compensating for this time violates California law is the common question to be said in it relating to commute time. Your Honor, but under Supreme Court authority in Dukes and this court's own authority, I have interpreted Dukes three or four times. We're now at common question time if we're going to talk about whether there is in fact class certifiable,  and why isn't that the question and why isn't that certifiable? It's because, as the Supreme Court and this court have stated, in performing the rigorous analysis of a class certification motion that is required, it is permissible and often necessary for a district court to consider merit issues. Here, the issue of whether commuting time is compensable under California law, if that commuting time is done, the general rule under California and federal law, is that commuting time is not compensable. Marillion makes that clear. So the question in this case is, does that general rule change when the commuting time is done in a company-owned vehicle? And again, Rudy and Marillion and many other cases stand for the proposition that under California law, that commuting time in a company vehicle is not compensable if use of the vehicle is voluntary. If the use of the vehicle is voluntary, story is over, question is over, case is over. If the use of the vehicle is mandatory, not voluntary, then the issue becomes does the employer exercise or impose substantial personal use restrictions on the employee's use of that vehicle so as to exercise a right of control? And therein we get back to the issue of whether this should have been decided on a summary judgment basis, at least to the predicate, because the very things you're talking about were decided here by the judge on a summary judgment motion as opposed to a trier of fact. Why should not this case be sent back as to the control issues or the suffered and assumed issues for a trier of fact to make that determination? Again, there's two issues, both involving community time, two orders, both involving community time that involve similar facts and issues but are subject to two completely different standards. If you conclude, if this court were to conclude, that there's a tribal issue of fact with regard to Mr. Alcantara's individual commuting time claim as to whether that was voluntary or not or whatever other tribal issue of fact this court might perceive to exist with regard to that claim, it's an individualized issue having to do with Mr. Alcantara. Mr. Alcantara signed an agreement that acknowledged that it was up to him. He says, well, I feel like I have to take it home because I'm concerned about security issues with regard to the van, even though the evidence presented with regard to these motions is that the only security requirement that Hobart imposes on technicians with regard to their vans is to lock the vehicle when you leave it unattended. How can there be a security issue when Hobart says you can park the van at the office and all you have to do is lock it? That can be done as easily at the branch office as it can be done at a person's home. But in any event, if you were to conclude, well, as to Mr. Alcantara and whether he believed he was actually required to use the van because he had security concerns and the like, again, an issue that is contradicted by the declarations filed by service technicians supporting Hobart's position. On class certification, that same individualized issue of fact supports the court's denial of class certification. Counsel, what you're suggesting is that all someone has to do to defeat a class certification in this context is to get an employee or one or two employees to say something contrary to the employee that is the representative of the class. That's exactly right, Your Honor. Where there is declaration testimony that is contradictory, then you obviously have, with regard to any particular situation, an individualized issue of fact. If we're going to go back and try Mr. Alcantara's commuting time claim, based on the theory, his theory, that although I signed this agreement, it really wasn't a voluntary thing. I'm going to cross-examine him about the agreement he signed. I'm going to cross-examine him about the absence of any instructions or directions from Hobart that because of security concerns, he take that vehicle home. I'm going to elicit a concession that the only security requirement imposed by Hobart is that the vehicle be locked when left unattended. And I'm going to present a half dozen or more, however many the trial court permits me to present, other technicians who will testify, hey, I take the van home because it's in my interest to take the van home. It saves me money. It's more convenient to do so. As Mr. Alcantara testified in his own deposition, it makes no sense not to take the vehicle home. If we get to the summary judgment motion, it seems to me that you have to tell us why there's no disputed issue of fact on impractical to leave the van at the office. Therefore, Hobart is in control. I mean, because that is the argument. It seems to me your argument is there's a policy. That policy is what it is. But they're saying, no, that is just what's written. What is real is, number one, employees are responsible for their tools, absolutely responsible, they're told. And number two, there are no parking places available. And number three, nobody comes to the office because of that. And you have to say why those are not facts which are disputed as to the reality. Certainly, because there's no evidence to back up those facts, notwithstanding the representations of counsel earlier this morning. There's no undisputed testimony that there's not sufficient space at a Hobart branch office to park the vehicle. What about your company representative? No, he did not testify. He's testifying with regard to when you say secure or unsecured parking. So you have to parse the words that were used. Counsel's talking about secured parking. And by that she meant, when questioning this witness, that the vehicle could be, you know, these branch offices are in industrial parks, low-level industrial parks, surrounded by parking space. There also are bays within these branch offices where vehicles can be brought in for servicing and loading and et cetera. And those bays can be closed off. So the testimony is, is there enough space within that bay to put all the vehicles if everybody wanted to bring their vehicle to the branch office and park it within a bay? And the answer to that is no. There's not enough space. But there's plenty of parking around the office park, inside the driveway to the office park, for these vehicles to be parked, which is where many of them are parked throughout the day. And, again, there's no, you know, that's somehow unsecured parking. But how is it any more unsecure than somebody's parking their vehicle in their driveway or in the street in front of their house? And, again, the only evidence of a Hobart policy imposing a security requirement on the service technician is that the vehicle be locked when left unattended. That requirement can be complied with whether the vehicle is parked at the branch office or the vehicle is parked at the person's home. To say that, you know, again, it's an overstatement to say that these employees are absolutely, that there's evidence that these employees are absolutely responsible for the contents of their service vans. That's not what the evidence shows. The evidence shows that an employee can be held responsible if there's a loss associated with negligence. How can it be negligent for an employee to park a vehicle at a branch office when that's expressly authorized by the service technician agreement and locked? You know, all you have to do, you can park it there and lock it. If you park it there and lock it and something is missing the next morning, how can that possibly be negligent when you've done exactly what Hobart permits and satisfied the only security measure that it imposes? Any further questions? Your Honor, if I may, I'd like to just... Counsel, we have time limits. We thank you very much for your argument, and we'll hear a brief rebuttal. The service technician rules and understanding agreement says as follows. I assume full responsibility for those tools as well as any service manuals. Should any of the tools lost, misplaced, be lost or misplaced, or they not be made available when requested or returned to me at the request of the company, then I accept full responsibility for such tools and agree to pay for such tools. That's what this agreement these employees signed. Where is that on the record? What's the ERN? 2901. Is this a jury case? If it were, a summary judgment hadn't been denied. Yes, Your Honor. It would be a jury case. I believe it would be because as counsel states, what he calls the evidence, again, I refer the court back to the record when I questioned the 30B6 witness, what I asked him and what I said, and there were declarations on both sides, as is often in class certification, as to why these techs parked these vehicles where they did and to the control issues that surround the legal issues that were addressed and the court summarily decided. Do either of my colleagues have further questions? Thank you very much. Thank you, Your Honor. I know you both feel very strongly about your issues. We appreciate your advocacy and we will take this case under advisement and it is now submitted.
judges: Lefkow, Smith, Smith